# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

I.M.,

　　　　　　　*Petitioner-Plaintiff,*

　　　v.

U.S. CUSTOMS & BORDER PROTECTION
*et al.*,

　　　　　　　*Respondents-Defendants.*

No. 20-cv-3576 (DLF)

## MEMORANDUM OPINION

In this action, petitioner-plaintiff I.M. challenges his expedited order of removal to his

native country of ▮▮▮▮▮  Before the Court is the respondents-defendants' Motion to Dismiss

for Lack of Jurisdiction, Dkt. 23.  Because this Court lacks jurisdiction to hear this case, the

Court will grant the respondents-defendants' motion.

## I.　　BACKGROUND

### A.　　Legal Background

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility

Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (codified as amended in scattered

sections of 8 U.S.C.), which amended the Immigration and Nationality Act (INA) and created an

expedited removal scheme.  Under the INA, as amended, aliens "arriving in the United States"

are subject to expedited removal if an immigration officer determines they are inadmissible due

to misrepresentation or lack of immigration papers.  *See* 8 U.S.C. § 1225(b)(1)(A)(i).  If such an

alien indicates to the immigration officer that he fears persecution or torture if returned to his

country, the officer "shall refer the alien for an interview by an asylum officer," *id.*

§ 1225(b)(1)(A)(ii), to determine whether he "has a credible fear of persecution [or torture]," *id.* § 1225(b)(1)(B)(ii).  If the interviewing asylum officer determines that the alien does not have a credible fear of persecution**,** the officer makes a "negative credible fear determination" and orders the removal of the alien "without further hearing or review," except by an immigration judge.  *Id.* § 1225(b)(1)(B)(iii)(I).  An alien may request that an immigration judge conduct a de novo review of the officer's negative credible fear determination, *see id.* § 1225(b)(1)(B)(iii)(III), but if the immigration judge upholds the asylum officer's negative credible fear determination, the determination is final and the alien is subject to removal, 8 C.F.R. § 1208.30(g)(2)(iv)(A).

Federal district courts have limited review of orders of removal under § 1225.  Except as provided in § 1252(e), the INA strips courts of jurisdiction to review: (1) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an [expedited removal] order," 8 U.S.C. § 1252(a)(2)(A)(i); (2) "a decision by the Attorney General to invoke" the expedited removal regime, *id.* § 1252(a)(2)(A)(ii); and (3) the "procedures and policies adopted by the Attorney General to implement the provisions of [§ 1225(b)(1)]," *id.* § 1252(a)(2)(A)(iv).

Section 1252(e), however, preserves judicial review for a small subset of issues relating to individual expedited removal orders:

> Judicial review of any determination made under [§ 1225(b)(1)] is available in habeas corpus proceedings, but shall be limited to determinations of—
> (A) whether the petitioner is an alien,
> (B) whether the petitioner was ordered removed under [§ 1225(b)(1)], and
> (C) whether the petitioner can prove . . . that the petitioner is [a lawful permanent resident], has been admitted as a refugee . . . , or has been granted asylum . . . .

*Id.* § 1252(e)(2).  In reviewing a determination under subpart (B) above—i.e., in deciding "whether the petitioner was ordered removed under [§ 1225(b)(1)]"—"the court's inquiry shall

be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." *Id.* § 1252(e)(5).

Section 1252(e) also provides jurisdiction to the district court for the District of Columbia to review "[c]hallenges [to the] validity of the [expedited removal] system." *Id.* § 1252(e)(3)(A). Such systemic challenges include challenges to the constitutionality of any provision of the expedited removal statute or its implementing regulations, as well as challenges claiming that a given regulation is inconsistent with law. *See id.* § 1252(e)(3)(A)(i), (ii). Any such systemic challenge must be brought within sixty days after implementation of the challenged statute or regulation. *Id.* § 1252(e)(3)(B). "[T]he 60–day requirement is jurisdictional rather than a traditional limitations period." *Am. Immigr. Laws. Ass'n v. Reno*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000).

### B.    Factual Background[1]

Petitioner-plaintiff I.M. is a citizen of ████ who works in education and sustainable farming. Pet. for Habeas Corpus & Compl. ¶¶ 20–21, Dkt. 3. In August 2019, I.M. obtained a B1/B2 business/tourism visa. Pet. ¶ 24. He first visited the United States in September and October of 2019 to learn about sustainable agriculture before returning to ████ Pet. ¶¶ 23, 25. On the same visa, he again flew back to the United States on October 29, 2020. Pet. ¶¶ 27– 28. Upon his arrival at O'Hare International Airport, a Customs and Border Protection (CBP) officer stopped I.M. for a secondary inspection. Pet. ¶ 29. The CBP officer who interrogated

---

[1] Considering a motion to dismiss, the Court treats a plaintiff's "factual allegations as true" and "grant[s] [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018) (internal quotation marks omitted). Accordingly, these facts are drawn solely from petitioner-plaintiff's Petition-Complaint and supplemental declaration.

him "concluded that I.M. was being paid by" an American farm, and "then determined I.M. to be

inadmissible." Pet. ¶ 31.  The CBP officer ordered I.M.'s removal, barred him from reentry, and

notified him that his visa would be cancelled.  Pet. ¶ 33.

      After this occurred, I.M. "expressed his fear of return to ███████ Pet. ¶ 35, because

there was an ██████████████ and "he had twice received death threats" based on his

████████████ with the ███████████, Pet. ¶ 34.  On November 6, 2020, a U.S.

Citizenship and Immigration Services (USCIS) asylum officer found I.M. "credible" but

nonetheless found "that he did not demonstrate a significant possibility of establishing eligibility

for asylum." Pet. ¶ 35; I.M.'s Suppl. Decl. ¶ 5, Dkt. 26.  An immigration judge affirmed this

decision on November 19.  I.M.'s Suppl. Decl. ¶ 6.  That evening, I.M. received an incomplete

and unsigned expedited removal order.  *Id.* ¶ 7.  After requesting a completed and signed order of

removal to Immigration and Customs Enforcement (ICE), he was notified that CBP would return

his paperwork and serve the form on him at the airport upon his departure.  *Id.* ¶ 9–10.  An

unknown CBP agent also revoked his visa sometime between October 29 and November 27,

2020.  *See* Pet. ¶¶ 28–38.  On November 27, I.M. was placed on a plane and returned to ██████

Pet. ¶ 39.

    **C.**    **Procedural History**

      On December 8, 2020, after his return to ███████ I.M. filed a joint petition for writ of

habeas corpus and complaint.  *See* Dkt. 3.  First, he seeks a writ of habeas corpus under 8 U.S.C.

§ 1252(e)(2) on the grounds that the CBP officers were not lawfully appointed and thus were not

vested with legal authority to determine his admissibility and issue an order of removal.

Pet. ¶ 95; *see* Pet. ¶¶ 90–95.  He therefore requests that the Court (1) "[d]eclare that the

determination of inadmissibility and order of removal purportedly issued against I.M. violated

the Appointments Clause;" (2) "[d]eclare the determination of inadmissibility and order of removal purportedly issued against I.M. invalid and void *ab initio*;" and (3) "order Respondents to place I.M. into removal proceedings before a properly appointed Immigration Judge," "[i]f Respondents choose to seek I.M.'s removal upon his return." Pet. at 24. Second, I.M. brings a claim under the Administrative Procedure Act (APA), seeking to have his visa revocation held unlawful and set aside as "not in accordance with law" and "in excess of statutory authority" under the APA. Pet. ¶¶ 98–99; *see* 5 U.S.C. § 706(2)(A), (C). He further requests this Court to "[o]rder Respondents to reinstate [his] visa." Pet. at 24.

Before the Court is the respondents-defendants' motion to dismiss for lack of subject-matter jurisdiction on three separate grounds. The government argues that (1) 8 U.S.C. § 1252(e)(3) precludes this systemic challenge, *see* Resp'ts'-Defs.' Mem. in Supp. of Mot. to Dismiss at 9–11, Dkt. 23; (2) petitioner is not in custody and thus his claims are not cognizable in a habeas action, *see id.* at 11–14; and (3) 8 U.S.C. § 1252(a) removes this Court's jurisdiction under 28 U.S.C. § 1331, *see id.* at 14–22.

## II.    LEGAL STANDARD

Under Rule 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and it is "presumed that a cause lies outside this limited jurisdiction," *id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799)). Thus, to survive a Rule 12(b)(1) motion, a plaintiff must demonstrate that the court has jurisdiction by a preponderance of the evidence. *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp.

2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).   A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(b)(1), (h)(3).

## III.   ANALYSIS

I.M. supplies two jurisdictional hooks to support his joint complaint and petition for a writ of habeas corpus.  He brings his complaint for APA relief under the federal question statute, 28 U.S.C. § 1331, *see* Pet. ¶ 10, and his petition for a writ of habeas corpus under 28 U.S.C. § 1331 and 8 U.S.C. § 1252(e)(2)(B), *see* Pet. ¶¶ 8–9.  The Court will address each in turn.

### A.   Federal Question Jurisdiction Is Not Available as to I.M.'s APA Claim

I.M. seeks to have his visa revocation, which occurred along with his order of removal under 8 U.S.C. § 1225(b)(1), set aside as not in accordance with law and in excess of statutory authority, in violation of the APA, 5 U.S.C. § 706(2)(A), (C).  *See* Pet'r's Opp'n to Resp'ts/Defs.' Mot. to Dismiss at 23, Dkt. 25; Pet. ¶¶ 37–38.  As noted above, the INA—the statute that governs judicial review of orders of removal—provides that certain matters are not subject to judicial review, including challenges related to an expedited order of removal pursuant to 8 U.S.C. § 1225(b)(1).  *See* 8 U.S.C. § 1252(a)(2)(A)(i).  Because I.M.'s APA claim relates to his order of removal, this Court lacks jurisdiction under 28 U.S.C. § 1331 to hear the claim.

The Court begins, as always, with the text of the relevant statute.  *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  Section 1252(a)(2)(A) provides in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—
> (i)    except as provided in subsection (e), *any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal* pursuant to section 1225(b)(1) of this title,
> (ii)   except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

      (iii)     the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or

      (iv)     except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A) (emphasis added).  This statute "clearly evince[s] Congress' intent to narrowly circumscribe judicial review of issues relating to expedited removal orders."  *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 431 (3d Cir. 2016).  The first clause—the notwithstanding clause—forecloses judicial review under any other jurisdictional grant of "an order of removal pursuant to section 1225(b)(1)," "except as provided in subsection (e)" of § 1252.  8 U.S.C. § 1252(a)(2)(A); *see also Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (plurality opinion) (explaining that the "[n]otwithstanding any other provision of law" clause of the jurisdiction-stripping provision of the Gun Lake Trust Land Reaffirmation Act precluded any federal question jurisdiction under § 1331).  "Thus, the statute makes abundantly clear that whatever jurisdiction courts have to review issues relating to expedited removal orders arises under § 1252(e)."  *Castro*, 835 F.3d at 426–27.

      This Court lacks jurisdiction to review I.M.'s APA claim relating to his visa revocation because it is a "cause or claim arising from or relating to the implementation or operation of an order of removal."  8 U.S.C. § 1252(a)(2)(A)(i).  As this Court has explained, § 1252(a)(2)(A) "gives the government virtually unreviewable authority to decide whether and when to implement the petitioners' removal orders, but the Court retains jurisdiction to hear claims challenging the constitutionality of the manner in which the government physically carries out the removals during the deportation process."  *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 59 (D.D.C. 2020).  This stems from the Supreme Court's recent ruling in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), which interpreted "arising from" in a different subsection of the same statute.  *See id.* at 839–41 (plurality opinion) (discussing 8 U.S.C. § 1252(b)(9)).  This "capacious phrase[],"

*id.* at 840, is not boundless but rather withholds jurisdiction for review of executive action related to (1) "review of an order of removal"; (2) "the decision to detain . . . in the first place or to seek removal"; and (3) "any part of the process by which . . . removability will be determined," *id.* at 841.

Here, I.M.'s visa revocation occurred during the same time period that his removal was being considered, *see* Pet. ¶¶ 28–38, and it was revoked by one of the same officers who ordered his removal, *see* Pet. ¶ 38.  His visa revocation is thus closer to the "*fact* of detention" than the "circumstances that ar[o]se *during* detention," *D.A.M.*, 474 F. Supp. 3d at 59, and is the kind of "executive[] discretionary decision[] to implement or execute a removal order" contemplated in *D.A.M.*, *id.*; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) (explaining that the jurisdiction-removing provisions of § 1252 "[we]re aimed at protecting the Executive's discretion from the courts"); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[W]e have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988))).

I.M.'s argument—that the revocation was unlawful because no regulation allowed it without a valid order of removal, *see* Pet'r's Opp'n at 25—is irrelevant to resolving the jurisdictional question.  And even if I.M.'s Appointment Clause argument is correct—which the Court does not address here—his visa revocation was nonetheless sufficiently bound up in his removal process that it falls within the ambit of the jurisdiction strip of 8 U.S.C. § 1252(a)(2)(A)(i).  Because I.M.'s visa revocation was a "discretionary decision[]" as contemplated in *D.A.M.*, 474 F. Supp. 3d at 59, related to a purported removal order,

§ 1252(a)(2)(A)(i) precludes this Court from exercising general federal question jurisdiction under § 1331.

**B.      Petitioner Does Not Have Standing for Habeas Corpus Relief**

I.M.'s petition for a writ of habeas corpus requests that the Court (1) "[d]eclare that the determination of inadmissibility and order of removal purportedly issued against I.M. violated the Appointments Clause"; (2) "[d]eclare the determination of inadmissibility and order of removal purportedly against I.M. invalid and void *ab initio*"; and (3) "order Respondents to place I.M. into removal proceedings before a properly appointed Immigration Judge" should the government "choose to seek I.M.'s removal upon his return."  Pet. at 24.  But the writ of habeas corpus serves to test the legality of detention.  And because I.M. is not in custody, the writ cannot grant him any relief.  He thus lacks standing to file a petition, and the Court lacks jurisdiction to adjudicate his petition.

*1.      Custody in habeas goes to the petitioner's standing*

Standing's "irreducible constitutional minimum" contains three requirements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (quoting *Defs. of Wildlife*, 504 U.S. at 560).  First, a plaintiff must plead an injury that is "concrete, particularized, and actual or imminent."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).  "Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant."  *Steel Co.*, 523 U.S. at 103.  "And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury."  *Id.*  "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement,

and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103–04 (footnote omitted).

Relevant here is redressability, which "examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (footnote omitted).  The obligation is on the plaintiff to show that the "injury will be redressed by a favorable decision." *US Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000) (internal quotation marks omitted) (quoting *Defs. of Wildlife*, 504 U.S. at 561).  Whether there is a custody requirement for habeas relief under 8 U.S.C. § 1252(e)(2) goes to redressability because the function of the writ of habeas corpus is to release someone from custody.

As the D.C. Circuit has explained, a "petitioner must demonstrate that he was in custody at the time he filed the petition" for there to be a live case or controversy.  *Qassim v. Bush*, 466 F.3d 1073, 1078 (D.C. Cir. 2006) (per curiam) (internal quotation marks omitted).  Although that case dealt with a change in custodial status between initiation of the action and the appeal, and thus spoke in terms of mootness, the same logic applies under a standing analysis.  *Cf. Arizonans for Off. English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))).  Indeed, this Court has already found that the custody requirement is jurisdictional.  *See Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 118 (D.D.C. 2006).  Because custody is required for habeas relief and I.M. is not

10

currently in custody, he lacks standing to file a habeas petition.[2]  *Cf. Qassim*, 466 F.3d at 1078

(explaining "the independent requirement that the petition must involve a live case or

controversy at all stages of review").

2.     *Custody is required for relief in the nature of habeas corpus*

The provision for judicial review in § 1252(e)(2) limits "[j]udicial review of orders under

section 1225(b)(1)" to habeas corpus proceedings.  *See* 8 U.S.C. § 1252(e)(1)–(2).  And habeas

review is "limited to determinations of—(A) whether the petitioner is an alien, (B) whether the

petitioner was ordered removed under such section, and (C) whether the petitioner can prove by

a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent

residence, has been admitted as a refugee under section 1157 of this title, or has been granted

asylum under section 1158 of this title, such status not having been terminated, and is entitled to

such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of

this title."  *Id.* § 1252(e)(2).  Section 1252(e) also limits relief to a hearing before an immigration

judge.  *Id.* § 1252(e)(4).  And only after the hearing before an immigration judge may an alien

"obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1)."  *Id.*

By making "habeas corpus . . . the sole remedy" for judicial review of exclusion orders,

"Congress ensured that only aliens *in custody* could challenge exclusion orders."  *Saavedra*

---

[2] The fact that 8 U.S.C. § 1252(e)(4) prohibits the court from ordering any "remedy or relief
other than to require that the petitioner be provided a hearing" before an immigration judge, *see*
Pet'r's Opp'n at 16, does not alter the fact that release from custody is the ultimate remedy
available.  Section 1252(e)(4) merely provides that any such hearing must occur before an
immigration judge in the United States.  Although the government has suggested in its briefing
that I.M. might have standing to request a hearing before an immigration judge, *see* Resp'ts'
Mem. at 22–26, the Court disagrees.  The sole purpose of any hearing before an immigration
judge would be to determine whether I.M. is entitled to a hearing before a district court judge,
and if he is entitled to such a hearing, the ultimate purpose of that hearing would be to determine
whether I.M. should be released from custody. As explained *infra* section III.B.2, I.M. is not
currently in custody, and thus habeas relief cannot be granted.

*Bruno v. Albright*, 197 F.3d 1153, 1161 (D.C. Cir. 1999) (emphasis added).  "And where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."  *Morissette v. United States*, 342 U.S. 246, 250 (1952); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law* 320 (2012) ("A statute that uses a common-law term, without defining it, adopts its common-meaning.").  Given its ancient lineage in Anglo-American legal history, there can be no doubt that "habeas corpus proceedings" is such a common-law term.  *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (documenting briefly "the common-law history of the writ"); *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 80 (1807) (explaining that the meaning of the term "habeas corpus" is "[b]y . . . reference to the common law").  As the Supreme Court has explained, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Rodriguez*, 411 U.S. at 484; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020) ("Blackstone wrote that habeas was a means to 'remov[e] the injury of unjust and illegal confinement.'" (quoting 3 William Blackstone, *Commentaries on the Laws of England* *137 (emphasis deleted))).  Although there have been some changes from the early nineteenth century to the present in the scope of the writ, "in each case [the petitioner's] grievance is that he is being unlawfully subjected to physical restraint."  *Rodriguez*, 411 U.S. at 486.  This custody requirement is also codified in statute.  *See* 28 U.S.C. § 2241(c).  To meet the custody "requirement, a petitioner must have been in custody at the time the habeas petition was filed."

*Banks v. Gonzales*, 496 F. Supp. 2d 146, 149 (D.D.C. 2007) (citing *Neville v. Cavanagh*, 611 F. 2d 673, 675 (7th Cir. 1979)).

The petitioner's arguments to the contrary are not availing.  First, he misreads the notwithstanding clause in 8 U.S.C. § 1252(a)(2)(A).  *See* Pet'r's Opp'n at 10.  That clause deals only with jurisdiction and does not speak to the nature of the proceedings for review pursuant to section 1252(e)(2).  *See* 8 U.S.C. § 1252(a)(2)(A) (explaining what courts "shall have [no] jurisdiction to review").  As such, the Court is not "prohibit[ed]," Pet'r's Opp'n at 10, from discerning general habeas principles from 28 U.S.C. § 2241.

Second, the fact that Congress removed the "in custody" language from § 1252(e)(2) and instead used the phrase "habeas corpus proceedings" does not mean that the Court can ignore the deep-rooted principles associated with that common-law term.  *See Sekhar v. United States*, 570 U.S. 729, 733 (2013) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947))); *see also NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981) ("Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.").  The phrase "habeas corpus proceeding" is such an "obviously transplanted" term.

While it is true that the Supreme Court has "'consistently applied' the presumption of reviewability" of administrative action, *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)), a presumption "may be overcome by specific language," *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).  Here the specific language is the use of "habeas corpus proceedings" in 8 U.S.C. § 1252(e)(2).  And § 1252 as a

whole tightly cabins judicial review.  *See M.M.V. v. Garland*, 1 F.4th 1100, 1107 (D.C. Cir. 2021) (explaining that the presumption had been overcome in the context of § 1252).[3]

### 3.  *Petitioner is not in any kind of custody*

Lastly, this Court turns to the question of whether I.M. is in custody.  The burden to establish custody falls on I.M.  *Gul v. Obama*, 652 F.3d 12, 21 (D.C. Cir. 2011).  At a minimum, he must show that he is in constructive custody such that his liberty is restrained.  *See, e.g.*, *In re Petitioners Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantanamo Bay* (*Guantanamo Petitioners*), 700 F. Supp. 2d 119, 127–37 (D.D.C. 2010) (rejecting four collateral consequences as insufficient to consider petitioners released to foreign countries to be "in custody" for habeas purposes); *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 46–48 (D.D.C. 2004) (petitioner who alleged being in a Saudi prison "at the behest and ongoing supervision of the United States" satisfied the requirement of constructive custody, *id.* at 30).  "Although the word 'custody' is elastic, all definitions of it incorporate some concept of ongoing control, restraint, or responsibility by the custodian."  *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003) (citing *Black's Law Dictionary* 384 (6th ed. 1990)).

The "collateral consequences doctrine" allows for review in habeas corpus even after release from custody so long as there are concrete consequences of the underlying conviction. *Gul*, 652 F.3d at 15–17.  But "[t]he Supreme Court has cautioned against extension of the presumption of collateral consequences."  *Id.* at 16 (citing *Spencer v. Kemna*, 523 U.S. 1 (1998)).

---

[3] The cases the petitioner cites in support of his argument that custody is not required for habeas corpus review for aliens, *see* Pet'r's Opp'n at 12, are not instructive because these cases either (1) "[a]ssum[ed], without deciding, that there [wa]s no custody requirement under § 1252(e)(2)," *Smith v. U.S. Customs & Border Prot.*, 741 F.3d 1016, 1020 (9th Cir. 2014), in violation of *Steel Co.*, *see* 523 U.S. at 91; (2) did not address the custody issue, *see Dugdale v. U.S. Customs & Border Prot.*, 88 F. Supp. 3d 1 (D.D.C. 2015); or (3) were vacated as moot, *see Li v. Eddy*, 259 F.3d 1132 (9th Cir. 2001), *vacated as moot by* 324 F.3d 1109 (9th Cir. 2003).

And the D.C. Circuit has found that detainees transferred to foreign countries were not burdened by sufficiently concrete collateral consequences so as to be in custody as needed to present a justiciable habeas petition. *See id.* at 14, 17–21. As this Court has already explained in the context of an alien who had been removed at the time of filing his petition, "[t]he controlling limit in this case is the consistent holding of federal courts that an alien who has already been removed from the United States and who files a habeas petition after his removal cannot satisfy the custody requirement." *Sadhvani*, 460 F. Supp. 2d at 119 (collecting cases from the Third, Seventh, Ninth, and Eleventh Circuits); *see also Guantanamo Petitioners*, 700 F. Supp. 2d at 127–37 (considering and rejecting as collateral consequences (1) conditions imposed by foreign governments; (2) stigma; (3) a prohibition of travel to the United States; and (4) an inability to bring a damages action).

The Seventh Circuit has addressed circumstances nearly identical to those here. In *Samirah*, that court held that a petitioner in a foreign country who filed a petition for a writ of habeas corpus was not in constructive custody because "the United States [wa]s exercising no ongoing control, restraint or responsibility over him." 335 F.3d at 549. The petitioner was, "in some sense, restrained insofar as he c[ould] not enter the United States. But that restraint, such as it is, only put[] him on par with the billions of other non-U.S. citizens around the globe who may not come to the United States without proper documentation." *Id.* at 549–50. As the court explained, to consider Samirah, "a Jordanian citizen (apparently) living in Jordan," who was "free to travel the world" to be "in federal custody" "stretche[d] the word 'custody' beyond what the English language or logic w[ould] bear" and was unsupported by legal authority. *Id.* at 551.

This Court has found the same. In *El-Hadad v. United States*, 377 F. Supp. 2d 42 (D.D.C. 2005), for example, this Court recognized that "habeas corpus relief [wa]s unavailable to

aliens living freely abroad," *id.* at 48, and therefore rejected the petitioner's attempt to challenge his visa denial from Egypt, *see id.* at 44–45.   The *El-Hadad* Court explained that *Jones v. Cunningham*, 371 U.S. 236 (1963), which expanded the conception of custody, was "only intended to extend habeas jurisdiction to aliens held at a point of entry into the United States," *El-Hadad*, 377 F. Supp. 2d at 47 (citing *Jones*, 371 U.S. at 239 n.9).   Similarly, in *Sadhvani*, this Court concluded that habeas relief was not available to a petitioner who "readily acknowledge[d] that he ha[d] been removed from the United States and that he" was then "moving in and out of Togo stealthily to avoid the Togolese authorities."   460 F. Supp. 2d at 119 (internal quotation marks omitted).   "The controlling limit" in *Sadhvani* was "the consistent holding of federal courts that an alien who has already been removed from the United States and who files a habeas petition after his removal cannot satisfy the custody requirement."[4]   *Id.* (citing *Kumarasamy v. Att'y Gen. of U.S.*, 453 F.3d 169, 173 (3d Cir. 2006); *Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1263 (11th Cir. 2003); *Miranda v. Reno*, 238 F.3d 1156, 1158 (9th Cir. 2001)).

That is the case here.   I.M. filed his habeas petition in December 2020, after he had been removed to ███████ in November 2020.   Like the petitioners in *El-Hadad* and *Sadhvani*, he cannot satisfy the custody requirement.   Therefore, his habeas petition is barred.

---

[4] It is true that in some cases in which aliens have filed habeas petitions before their removal, courts have found "the bar on readmission" to be "a legally cognizable collateral consequence that preserves a live controversy even after deportation of the petitioner."   *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) (collecting cases from the First, Third, Fourth, and Ninth Circuits).   But the instant case is distinguishable from those cases because I.M. did not file his petition until after he was removed to ███████.

## CONCLUSION

For the above stated reasons, the respondents-defendants' Motion to Dismiss, Dkt. 23, is granted.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

January 21, 2022